DECISION IN MANDAMUS
{¶ 1} Relator, Robert Easterling, commenced this original action in mandamus requesting that this court order respondent Industrial Commission of Ohio ("commission") to vacate its order which denied relator's application for permanent total disability ("PTD") compensation and to award relator PTD compensation pursuant to State ex rel. Gay v.Mihm (1994), 68 Ohio St.3d 315. In the alternative, relator requests that this matter be remanded to the commission to address the non-medical disability factors and to determine whether they prohibit relator from returning to work.
 {¶ 2} Pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals, this matter was referred to a magistrate of this court to conduct appropriate proceedings. The magistrate rendered a decision, including findings of fact and conclusions of law, and has recommended that this court issue a writ of mandamus vacating the commission's order and returning this matter to the commission for consideration of relator's PTD application after the commission determines the extent of Dr. Ross's "dustless environment" restriction and after it determines whether or not relator has been or is capable of pursuing rehabilitation or other training. (See attached Appendix A.) No objections were filed to the decision of the magistrate.
 {¶ 3} Finding no error or other defect on the face of the magistrate's decision, we adopt the decision of the magistrate as our own pursuant to Civ.R. 53(C), including the findings of fact and conclusions of law contained therein. In accordance with the magistrate's decision, the requested writ of mandamus is granted to the extent that it orders the commission to vacate its order denying relator's PTD application and returns this matter to the commission for consideration of relator's PTD application after the commission determines the extent of Dr. Ross's "dustless environment" restriction and after it determines whether or not relator has been or is capable of pursuing rehabilitation or other training.
Writ of mandamus granted.
BROWN, P.J., and SADLER, J., concur.
 APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
State of Ohio ex rel. Robert Easterling,:
 Relator, :
v. : No. 04AP-902
Industrial Commission of Ohio and : (REGULAR CALENDAR)
Cab Incorporated, Buckeye Monument
Company, :
Respondents. :
 MAGISTRATE'S DECISION Rendered on February 24, 2005 Philip J. Fulton Law Office, and Jacob Dobres, for relator.
Jim Petro, Attorney General, and Andrew J. Alatis, for respondent Industrial Commission of Ohio.
 IN MANDAMUS {¶ 4} Relator, Robert Easterling, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which denied relator's application for permanent total disability ("PTD") compensation and that this court should award relator PTD compensation pursuant to State ex rel. Gay v. Mihm (1994), 68 Ohio St.3d 315. In the alternative, relator requests that this matter be remanded to the commission to address the nonmedical disability factors and how they impact on whether relator can return to work.
Findings of Fact:
 {¶ 5} 1. Relator has two claims which are relevant to this matter. On July 8, 1997, relator sustained a work-related injury in the course of his employment as a sandblaster and that claim has been allowed for "sprain lumbosacral." During the course of his employment as a sandblaster, relator was exposed to silica dust and, as such, his claim is also allowed for "simple silicosis, minor degree; major depressive disorder, recurrent."
 {¶ 6} 2. In October 2001, relator filed his initial application for PTD compensation. By order dated May 7, 2002, relator's application was denied when the commission found that, from a psychological standpoint, he could return to the job at which he was injured and, from a physical standpoint, he could perform medium level work. The commission specifically noted, however, as follows:
SHO does observe parenthetically that silicosis is a progressively disabling disease, and that the mere passage of time may increase the debilitating effect of such allowed condition, without the necessity of additional allowances, in the future.
 {¶ 7} 3. Relator filed a second application for PTD compensation on September 2, 2003. In support of his application, relator submitted the July 18, 2003 report of Dr. Sid Shih, who opined as follows:
In reference to my letter to Mr. Enstein dated September 17, 2001, I have already stated that Mr. Easterling has reached maximum medical improvement. Since then, his depression has become somewhat worse. Thus, I agree that he is permanently and totally disabled.
 {¶ 8} 4. On relator's application, he indicated that he had graduated from high school and that he could read, write, and perform basic math, although not well.
 {¶ 9} 5. Relator was examined by Dr. James K. Ross on February 24, 2004. Dr. Ross examined relator for his allowed physical conditions. With regard to his lumbosacral strain, Dr. Ross noted as follows:
SLR [straight leg raising] was only 10-20 degrees bilaterally. Distracted SLR, however, was 80+ degrees bilaterally. The marked difference between SLR and distracted SLR measurements indicates a likely validity issue with claimant's subjective-based limitations of movement. The Non-organic signs compatible with exaggeration were also detected by c/o axial rotation of LS spine. * * *
 {¶ 10} Dr. Ross concluded that relator had reached maximum medical improvement ("MMI") for this condition and assessed a ten percent whole person impairment with regard to his silicosis. Dr. Ross noted the following relevant treatment:
Spirometry was attempted using ATS protocol. However, the level of effort was not sincere. The tech that performed this test has performed 20,000 of these and the examiner observed the testing. The seven test efforts were all inadequate effort/cooperation. The curves looked much like previous tests performed by other examiners where effort appeared questionable. The FEV1 was never steep enough and the FVC plateau was ever reached. The claimant would only perform the test sitting. The claimant['s] efforts sub-maximal. Even so, the FVC was 61.2% predicted and the FEV1 was 53.8% predicted. Despite these values not being as high as they should have been if claimant would have given good effort, they are better than previous studies sent for review where he gave even less effort. Example: 8/23/1987 note of Dr. Orfahli where FVC was only 17% and FEV1 was only 12%. Dr. Zaldivar's note dated 8/25/1998 states "Mr[.] Easterling has never cooperated with a breathing test which therefore invalidates all of them."
 {¶ 11} Dr. Ross attempted a spirometry test as well and noted as follows:
The silicosis condition usually uses Spirometry. Since the values are not as normal as they should be, based on the obvious gap seen during his seven attempts to blow, the actual whole person impairment would be better than the values will indicate. Based on Table 8 on p162 of the AMA Guides, 4th Edition, a category must be selected. His actual FEV1 and FVC would place him in between category 2 and 3. Based on his less than adequate attempts to meet the ATS standards, Category 2 is selected. The value of 14% is selected as the most likely value this examiner would have selected if he had provided full efforts on his Spirometry. There are enough records to indicate there is some degree of lung problems, even though some of his lung disease must be attributed to his heavy smoking.
 {¶ 12} Dr. Ross concluded that relator had reached MMI for his silicosis and assessed a 14 percent whole person impairment for that condition as follows:
There is no reason why claimant cannot do sedentary duty work, even though he may require training. The lack of any work in seven years will make a job difficult and may require vocational rehabilitation. His lack of motivation and reliance on manual labor skills in the past will also make actual work unlikely, but if motivated, there are no contraindications to sedentary work in a dustless environment.
 {¶ 13} Dr. Ross completed a physical strength rating and concluded that relator was capable of performing sedentary work.
 {¶ 14} 6. Relator was examined by Dr. Ralph E. Skillings on February 11, 2004, for his allowed psychological condition. Dr. Skillings noted that relator indicated that he repeated first and second grades, that he had performed marginally on achievement and placement testing in special education classes, and that he struggles with reading, spelling, and math. Dr. Skillings concluded that relator had 25 percent moderate impairment from his allowed psychological conditions and that his allowed psychological conditions would not prevent him from returning to his former position of employment or performing any other employment for which he was otherwise qualified.
 {¶ 15} 7. An employability assessment report was prepared by Lynne Kaufman, MS, CRC, CCM, PC, dated April 13, 2004. Ms. Kaufman indicated that if, Dr. Ross's restriction to a "dustless environment" meant "literally no dust," then Ms. Kaufman concluded there was no work that relator could perform; however, if Dr. Ross meant that relator could work in a minimal dust environment, then, based upon the reports of Drs. Skillings and Ross, Ms. Kaufman found that relator could perform the following jobs: "stuffer, sorter, document preparer, microfilming, surveillance system monitor." Ms. Kaufman opined that, at his age of 49, he was a younger person and should be able to adapt to a wide variety of entry-level occupations. Ms. Kaufman noted that relator had a high school education but reported that he could not read, write or do math well. Further noting that Dr. Skillings reported that relator had been in special education, has trouble reading, spelling, and math, Ms. Kaufman concluded, nevertheless, that his academic skills were adequate for many entry-level jobs but noted that there was a question of literacy. Ms. Kaufman noted further that relator had no transferable skills and that, having been in the same occupation for 23 years, he may have some difficulty with adaptation to different types of jobs.
 {¶ 16} 8. An employability assessment report was prepared by Beal D. Lowe, Ph.D., and dated April 15, 2004. Dr. Lowe concluded that relator was permanently and totally disabled as a result of his borderline intellectual and academic abilities.
 {¶ 17} 9. Relator's application was heard before a staff hearing officer ("SHO") on July 13, 2004, and resulted in an order denying the requested compensation. The SHO relied upon the reports of Drs. Skillings and Ross and concluded that relator was capable of performing alternative sedentary sustained remunerative employment activity. The SHO specifically agreed with and relied upon Ms. Kaufman's vocational assessment and then provided his own vocational assessment as follows:
The Staff Hearing Officer agrees with the assessment of Ms. Kaufman in finding that the claimant's vocational factors are generally neutral to positive assets which would assist him in a return to gainful employment. Claimant's age is currently 49 years which provides him ample opportunity to perform alternative positions prior to reaching the generally accepted retirement age or in seeking remediation to assist in such endeavors. Claimant's education demonstrates a reasonable level of intellectual ability as he was capable of graduating from high school. Finally, claimant's occupational history demonstrates the ability to learn skilled activities and perform them on a daily basis. Therefore, the Staff Hearing Officer finds that the claimant retains the vocational assets necessary to perform alternative sedentary employment and therefore, it is found that he is not permanently and totally disabled.
 {¶ 18} Furthermore, the SHO noted that relator had not attempted vocational rehabilitation and noted the following additional reason for denying compensation as follows:
As an additional basis for the denial of this application, the Staff Hearing Officer relies upon the rule of law as found in cases ofSpe[e]lman, BF Goodrich, Bowling, and Wilson, which indicates that a claimant must make any and all reasonable efforts and attempts at vocational rehabilitation and re-training which would otherwise permit a return to work. In this case, claimant last worked in July of 1997 and has made no efforts in any of these endeavors which would assist or permit a return to work. Therefore, the Staff Hearing Officer finds that the claimant has not sustained his burden in this regard and his application is DENIED on this additional basis.
 {¶ 19} 10. Thereafter, relator filed the instant mandamus action in this court. Conclusions of Law:
 {¶ 20} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. State ex rel. Pressley v. Indus. Comm. (1967),11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. State exrel. Elliott v. Indus. Comm. (1986), 26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State ex rel. Lewis v. Diamond Foundry Co. (1987),29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. State ex rel. Teece v. Indus. Comm. (1981), 68 Ohio St.2d 165.
 {¶ 21} The relevant inquiry in a determination of permanent total disability is claimant's ability to do any sustained remunerative employment. State ex rel. Domjancic v. Indus. Comm. (1994),69 Ohio St.3d 693. Generally, in making this determination, the commission must consider not only medical impairments but, also, the claimant's age, education, work record and other relevant nonmedical factors. State ex rel. Stephenson v. Indus. Comm. (1987),31 Ohio St.3d 167. Thus, a claimant's medical capacity to work is not dispositive if the claimant's nonmedical factors foreclose employability. Gay, supra. The commission must also specify in its order what evidence has been relied upon and briefly explain the reasoning for its decision. State ex rel. Noll v. Indus. Comm. (1991), 57 Ohio St.3d 203.
 {¶ 22} Because the magistrate finds both that the commission relied upon an ambiguous medical report and because the magistrate finds a violation of Noll, the magistrate recommends that the court issue a writ of mandamus as follows.
 {¶ 23} It is clear that, from a psychological standpoint, relator can return to his former position of employment or another employment for which he is otherwise capable. However, with regard to relator's physical capabilities, the commission relied upon the report of Dr. Ross. While Dr. Ross concluded that relator was capable of work at a sedentary strength level, he also noted that relator had the additional restriction of working in a "dustless environment." In assessing his job capabilities, Ms. Kaufman noted that if Dr. Ross intended that relator work in an environment where there was literally no dust, then no work would be available; however, if relator could work in sedentary jobs where there was minimal dust, then Ms. Kaufman listed several jobs which she believed relator could perform. It is clear from the commission order that the SHO accepted the vocational report of Ms. Kaufman. While it may be assumed that, in the real world, there are no completely dust free work environments, the question was raised and left unanswered. Ambiguous medical reports capable of more than one interpretation cannot constitute "some evidence" upon which the commission can rely. State ex rel. Stateex rel. Eberhardt v. Flxible Corp. (1994), 70 Ohio St.3d 649. Without some clarification from Dr. Ross, the magistrate finds that the commission abused its discretion by relying upon his report.
 {¶ 24} Furthermore, the commission denied relator's application for the additional reason that relator had failed to seek any vocational rehabilitation. As a general rule, this constitutes an additional reason why the commission may deny PTD compensation. However, in the present case, there was considerable evidence that relator may have lacked the academic potential to have engaged in rehabilitation services. While the case law is clear that it is permissible for the commission to hold a PTD claimant accountable for their failure to take advantage of opportunities for rehabilitation or retraining, the commission is to look not only at past abilities but at current and future (i.e., potentially developable) skills. See State ex rel. Ewart v. Indus. Comm. (1996), 76 Ohio St.3d 139.
 {¶ 25} The Supreme Court of Ohio has repeatedly held that a claimant's failure to undergo rehabilitation or retraining can be a factor for the commission's consideration in a PTD adjudication. State ex rel. Wilsonv. Indus. Comm. (1997), 80 Ohio St.3d 250; State ex rel. Wood v. Indus.Comm. (1997), 78 Ohio St.3d 414; State ex rel. Bowling v. Natl. CanCorp. (1996), 77 Ohio St.3d 148.
 {¶ 26} In Wilson, the court stated that PTD compensation is to be viewed as a compensation of last resort and awarded only when all reasonable avenues of accomplishing a return to some sustained remunerative employment have failed. As such, the commission can consider a claimant's failure to participate in a return-to-work effort to the best of his or her abilities into account. The court noted further that extenuating circumstances may excuse a claimant's nonparticipation in reeducation or retraining efforts.
 {¶ 27} In the present case, there is evidence that the relator's intellectual functioning is questionable. In his application, relator indicates he can read, write and perform basic math, however, in Ms. Kaufman's vocational report, upon which the commission relied, Ms. Kaufman indicates that there is a question raised regarding relator's literacy and she recommended a vocational evaluation to clarify. While there is other evidence in the record that relator has not necessarily performed at his best on various testing, the commission did not address this issue. The commission did not take this into consideration when it determined whether or not relator had the intellectual capacity to have attempted rehabilitation or retraining. This magistrate finds that the commission's failure to do so constitutes an abuse of discretion.
 {¶ 28} Relator asks that this court award him PTD compensation pursuant to Gay; however, this magistrate disagrees. Although the magistrate finds a Noll violation in this case, there is medical evidence in the record, which if relied upon, would weigh against relator's receipt of PTD compensation. Because there is contradictory medical evidence in the record, Gay relief is inappropriate.
 {¶ 29} Accordingly, the magistrate finds that the court should issue a writ of mandamus vacating the commission's order and returning this matter to the commission for consideration of relator's PTD application after the commission determines the extent of Dr. Ross's "dustless environment" restriction and after determining whether or not relator has been or is capable of pursuing rehabilitation or other training. Thereafter, the commission should determine relator's entitlement to PTD compensation.